### STIRLING CO. v. RUST BOILER CO.

(Circuit Court W. D. Pennsylvania. February 26, 1906.)

#### No. 10.

PATENTS—INFRINGEMENT—STEAM BOILERS.

The Faber patent No. 680,707, for a water tube steam boiler, the specific purpose of the invention being to create and maintain sectional currents, construed and *held* not infringed.

In Equity. On final hearing.

Bakewell & Byrnes, for complainant.
Wm. L. Pierce, for respondent.

BUFFINGTON, District Judge. This is a bill in equity brought by the Stirling Company against the Rust Boiler Company. It charges infringement of claims 1, 2, 3, 5, and 11 of patent No. 680,707, for a steam boiler, granted August 20, 1901, to Frank M. Faber, assignor to complainant. The defenses are invalidity of the patent and noninfringement. In water tube boilers, a general continuous circulation through the tubes is desirable, since thereby the entire water body is subjected to higher heat conditions, more rapid heat transference is secured, and a wider diffused uniformity of water temperature is had. It will thus be seen that maximum rapidity in steam raising, with less liability to burn out a boiler in spots is secured. Such a general main circulation is created, and results from the general plan on which the boiler is built. In addition to such general circulation what are known as "local minor circulations" exist. These have no fixed or determinate courses or times of beginning, continuing, or ending. They result from local, shifting, and uncontrolled causes, or factors. Since the tendency of hotter water is to rise and of cooler to sink, it will be seen that local heat conditions may at times cause some tubes in the same bank to draw upward and some downward, and indeed, the hotter side of one tube to drive water nearest it upward, and while the cooler side of the same tube draws downward. Such inequality and variations in heat conditions result from fuel, draft, and other factors. For instance, fresh fuel on one

side of a boiler grate and an incandescent bed of coals on the other may cause wide divergence of heat, and, therefore, different current courses in the same bank of tubes. It will thus be seen that, generally speaking, main circulations are created by the structural type of the boiler; local circulations by operative conditions. Now, prior to Faber's patent, it was well known that these main circulations in boilers could be created by certain structural features, and that such main circulations could be either of a general or sectional character. As illustrating a sectional circulation; that is, a continuous, designed circulation, covering a section only of a boiler system, we may refer to the current between the front upper steam drum and front lower mud drum of the boiler shown in the accompanying Fig. 6 of Pierpoint's patent, No. 529,306, of November 13, 1894.

*Fig. 6.*

Here the water, after passing through the rear mud drum and the rear and center upper drums, finally enters the forward upper drum, 4d. By reason of a bank of tubes connecting the latter drum with forward mud drum, 7d, and by reason of the baffler, 16d, placed between tubes, 11d, and 15d, of the connecting bank, the water is made to travel in the section of the boiler system composed of the forward upper and lower drums and their connecting tubes. Of course, in such section, varying heat and draft conditions may start temporary

local currents from time to time. On the other hand, a boiler embodying a main or general circulation is seen in the accompanying figure taken from Stirling's patent, No. 479,678, of July 26, 1892.

Apart from its feed water system, which need not be referred to, the boiler has two upper drums, each connected to the single mud drum, and connected to each other by water passages. By means of a baffler interposed between the tubes leading from the two upper drums to the mud drum a current upward in the front bank is created. This causes a main general circulation through the whole working

part of the boiler, and of so pronounced a character as to have gained for itself the distinctive name of the Stirling cycle of circulation. Of course, as said above of the sectional system, there are also in this general system local circulations from time to time, which are caused by varying fuel and draft conditions. Now Faber's boiler is of the sectional type, and a study of his patent shows that his device, and all the heat and current controlling factors used, were employed not only to create and maintain sectional currents, but to exclude therefrom a main or general circulation. This boiler is shown in the accompanying cut.

Without referring to the feed water system, and confining ourselves to the working sections, we have an upper rear steam and water drum and a lower rear mud drum connected by banks of tubes. By the interposition of a baffler between the forward and the rear parts of this bank, the forward tubes create an upward and the rear a downward current between the two drums composing that section. So, also, the forward upper drum and the forward lower drum, by a baffler placed in the same way in the midst of the connecting bank of tubes, create another and similar sectional current. It will be noted that not only are these sectional currents created by the functional arrangement of the several rows of tubes, but by the omission of any water connection between the upper drums the main or general Stirling cycle of circulation has no pathway in which to travel and cannot exist in Faber's device. The "separate," "distinct," "independent," and "directed" characters of these sectional currents are specified as constituting the invention. The patentee's words are:

"My invention relates to water-tube boilers, its object being to provide for the proper circulation of the water between two separate steam and water drums and a lower mud drum, so that two distinct and independent cycles of circulation are established and the flame and heated products of combustion are so directed as to properly generate and maintain such cycles of circulation."

And moreover, the sectional character of the two parts of the boiler are recognized where the patentee described certain baffle walls, tubes, etc., as "forming part of the front cycle of circulation" and others as "forming part of the rear cycle of circulation." The operation of the device in its different sections is thus described:

"The natural result is a cycle of circulation from the mud drum up through the tubes, 15, to the steam and water drum, 1, and thence back to the mud drum through the tubes, 16. In the same manner a separate cycle of circulation is established from the mud drum up through the tubes, 17, to the steam and water drum, 2, and thence back to the mud drum through the tubes, 18. The partition, 4 [shown in an alternative single mud drum construction, Fig: 1 of Patent], serves to separate these two cycles of circulation, and prevents each from interfering with, checking or modifying the operation of the other. * * * The steam in this way is collected quickly into the two upper drums, from which it can pass from two distinct cycles of circulation."

It will thus be seen that the averred and only object of the patentee and the only device disclosed was one for the existence of sectional, and the nonexistence of general, cycles of circulation. Now the respondent's structure, which is shown in the cut on the opposite page is built to create and maintain a main, nonsectional cycle. In it are two upper drums, the water spaces of which are connected by a bank of tubes; and two lower drums also connected by a bank of tubes. The two forward drums are connected by five rows of tubes placed in front of the single baffle wall of the plant and the two rear drums are likewise connected by five rows in the rear of such baffle wall. The proofs show that at one of the tests the highest temperature of

*Fig. 1.*

the tubes tested in the front section of the boiler was 1,792 degrees and lowest 1,007 degrees; that of the rear section the highest 855 degrees, the lowest 580 degrees. It will thus be seen the highest temperature of the rear section being relatively much lower than the lowest temperature of the front, a main rectangular cycle, extending through all parts of the whole boiler, is created upward through the front section tubes and downward through the rear section tubes. It is quite likely, of course, that the tubes in the center of the front chamber absorb more heat than the vertical tubes farther front and the curved

tubes farther back in the chamber, and that, owing to this and varying heat and draft conditions, shifting, local currents may from time to time appear. But, conceding such currents to be found, they are not the predetermined, defined, functionally-created, sectional currents of Faber's device. The purpose of that structure was not to create local fugitive currents, but to create and maintain steady, continuous, functionally-created ones, which in the sense of having a sectional course were, to that extent, but only to that extent local. If the curbed tube of Rust's were close to the other tubes of its bank, there could be no pretense to sustain a charge of infringement. But we cannot see how its spacing a short distance to the rear can make it infringe so long as it is kept in substantially the same heat belt as the other tubes, and no baffle separates them. Moreover, placing it further back is not evidence of an infringing intent, for it is needed there to render possible the use of a very narrow shell baffler instead of a much wider, self-supporting one. Finding as we do, that this boiler with its well-sustained main rectangular cycle of circulation is of a distinctly different type from Faber's device, with its sectional cycles of circulation; that the existence of minor, negligible local currents in it is accidental, and not the result of any purpose, wish, or object leading to their creation, we think it would be a perversion of the patent law to permit Faber's patent to dominate and control such a widely divergent type of construction as Rust's.

Waiving the question of the validity of the patent, and especially of the first and second claims, we are of opinion the charge of infringement is not sustained.

A decree may be drawn dismissing the bill.